IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

POTOMAC CONFERENCE
CORPORATION OF SEVENTH-DAY         :
ADVENTISTS,
d/b/a TAKOMA ACADEMY,              :

   v.                             :   Civil Action No. DKC 13-1128

                               :

TAKOMA ACADEMY ALUMNI
ASSOCIATION, INC., et al.          :

                               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark infringement and federal unfair competition, common law unfair competition, and conversion action is a motion to dismiss (ECF No. 9) filed by Defendants Takoma Academy Alumni Association, Inc. ("TAAA, Inc." or "unincorporated association") and Henry Pittman ("Mr. Pittman") (collectively "Defendants"). The issues are fully briefed and a hearing was held on August 22-23, 2013. On September 5, 2013, the parties submitted a joint request to refer the matter to a magistrate judge for mediation. The case was subsequently referred to Magistrate Judge Jillyn K. Schulze for ADR. A settlement conference was held on October 21, 2013, but no settlement was reached (ECF No. 31). The court now rules. For the following reasons, Defendants' motion to dismiss will be denied.

**I.  Background**

   **A.  Factual Background**[1]

   The Potomac Conference Corporation of Seventh-day Adventists ("Potomac Conference" or "Takoma Academy" or "Plaintiff") owns and operates a number of Seventh-day Adventist churches and schools, including Takoma Academy. Takoma Academy is a faith-based secondary school providing educational services to children in grades nine (9) through twelve (12). Washington Training Institution founded Takoma Academy in 1904; Takoma Academy then became a separate institution as part of the Potomac Conference in 1934. (ECF No. 1 ¶ 10).

   Plaintiff alleges that Takoma Academy is also known as "TA" and that Takoma Academy has "continuously and exclusively" used the "Takoma Academy" and "TA" marks since the school's founding in 1904 "in connection with the promotion, sale, and provision of its educational goods and services." (*Id.*). Plaintiff also alleges that Takoma Academy has displayed "Takoma Academy" and "TA" on "the school building, letterhead, correspondence, bills, direct mailings, and school and alumni newsletters." (*Id.* ¶ 11).

   Plaintiff asserts that Takoma Academy Alumni Association ("TAAA" or "unincorporated alumni association") is an

---

[1] For the motion to dismiss, the well-pled allegations in Plaintiff's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

unincorporated alumni association that Takoma Academy established in the 1970s to organize alumni events, solicit contributions, and fundraise for the school. (*Id.* ¶ 12). Plaintiff also contends that Takoma Academy maintained mailing lists, phone numbers, email addresses, and other alumni information, which was consolidated into a database and that Rick Feldman ("Feldman"), a Takoma Academy alumnus, voluntarily maintained. (*Id.* ¶ 13). Plaintiff avers that Takoma Academy oversaw TAAA and controlled TAAA's finances and assets. Specifically, according to the complaint, "[a]ll fundraising checks raised by TAAA were deposited into Takoma Academy's operating account. All invoices relating to alumni activities for TAAA were paid through Takoma Academy's operating account." (*Id.* ¶ 12).

Mr. Pittman, a Takoma Academy alumnus, became TAAA's president in April of 2011. (*Id.* ¶ 14). According to Plaintiff, Potomac Conference and TAAA eventually disagreed about the operations and independence of the alumni association. (*Id.* ¶ 15). Consequently, on April 10, 2012, Mr. Pittman filed Articles of Incorporation with the Maryland State Department of Assessments and Taxation (*see* ECF No. 1-2, at 4-11) to incorporate the alumni association and establish Takoma Academy Alumni Association, Inc. ("TAAA, Inc." or "incorporated alumni association"). (ECF No. 1 ¶ 16). Plaintiff asserts that Takoma

Academy did not authorize the incorporation and that "Pittman was fully aware that his action was not approved by Plaintiff." (*Id.*).

According to the complaint, in May of 2012, one month after Mr. Pittman incorporated the alumni association, "Manny Montero, the resident agent and purported general counsel for TAAA, Inc. . . . threatened Feldman and demanded access to the Alumni Information" contained in the database Plaintiff maintained, and that "[u]nder the threat of legal action, and based on ignorance of any dispute between Plaintiff and Defendants," Feldman provided access to the Alumni Information to Montero and Defendants. (*Id*. ¶ 17).[2]

On May 31, 2012, one month after the incorporation of the alumni association, Plaintiff filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the term "Takoma Academy," and the USPTO registered the mark on February 5, 2013. (ECF No. 1-2, at 2). Then, on June 7, 2012, Plaintiff voted to disassociate itself from TAAA, Inc. "after learning of the formation of TAAA, Inc." (ECF No. 1 ¶ 18; *see also* ECF No. 1-2, at 19 (message from Pittman) ("On June 7, 2012, the Takoma Academy Board of Trustees and the leadership of the Potomac Conference of Seventh-day Adventist Church voted to

---

[2] Mr. Montero is one of the counsel of record for the Defendants in this case.

take permanent control of Takoma Academy Alumni Association (TAAA) and administer the association under the authority of the Board of Trustees and the Potomac Conference.")).   Plaintiff contends that after disassociating, it demanded that Defendants "cease any use of the Marks."[3]  (ECF No. 1 ¶ 18).  On January 17, 2013, Takoma Academy sent a Cease and Desist letter addressed to Mr. Pittman, demanding that "any and all use of the name Takoma Academy and TA, or any derivatives thereof, immediately cease" (ECF No. 1 ¶ 24) and to "*immediately return* to Takoma Academy all databases, alumni lists and other property belonging to Takoma Academy which were given to [Mr. Pittman] when [he] became president of the Takoma Academy Alumni Association." (ECF No. 1-2, at 43) (emphasis in original).

Plaintiff asserts that Defendants nevertheless "continue to use Plaintiff's Marks to identify their corporation TAAA, Inc." (ECF No. 1 ¶ 19).   Specifically, Plaintiff asserts that Defendants created a Facebook page and a Takoma Academy Alumni Association, Inc. group on the *LinkedIn* website on January 29, 2013, *after* Defendants received the Cease and Desist Letter.[4]  On these websites, TAAA, Inc. purports to be affiliated with Takoma Academy.  (*Id.* ¶ 21; *see also* ECF No. 1-2, at 34-36).

---

[3]  In the complaint, Plaintiff refers to "TA" and "Takoma Academy" as "the Marks."  (ECF No. 1 ¶ 11).

[4]  *LinkedIn* is a professional network that includes individual company profiles and groups.

Plaintiff alleges that Defendants use the "TA" and "Takoma Academy" marks in their communications with alumni. Plaintiff also contends that Defendants send "numerous messages to alumni using TAAA and TAAA, Inc. interchangeably." (*Id*. ¶ 20; *see also* ECF No. 1-2, at 18-32). Plaintiff further avers that both Takoma Academy and TAAA, Inc. planned competing alumni weekends with a golf tournament referencing "Takoma Academy," "TA," "Takoma Academy Alumni Association," and "TAAA." (ECF No. 1-2, at 12-16, 45). Plaintiff maintains that Mr. Pittman "continues to guide, advise, and induce TAAA, Inc. to use Plaintiff's Marks and benefits therefrom by having installed himself as the president thereof." (*Id*. ¶ 26). Finally, Plaintiff asserts that Defendants filed an application with the USPTO to register "Takoma Academy Alumni Association" as a mark. (*Id*. ¶ 30). Based on the record, Defendants' application with the USPTO remains pending.

**B.  Procedural Background**

Plaintiff filed a complaint on April 16, 2013. (ECF No. 1). Plaintiff alleged four claims: (1) trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a) (against both Defendants); (2) vicarious trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a) (against Mr. Pittman); (3) common law unfair competition (against both Defendants); and

(4) conversion by wrongful detention (against both Defendants). (*Id*. ¶¶ 31-67). In the complaint, Plaintiff seeks, *inter alia*, an injunction barring Defendants from further use of "TAKOMA Academy," "TA," or "any mark, word, or name similar to Plaintiff's Marks which is likely to cause confusion or mistake or to deceive." (*Id*. at 14).

Defendants moved to dismiss on May 10, 2013 pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 9). Defendants argue that under Rule 12(b)(1), the court lacks subject matter jurisdiction over Plaintiff's trademark infringement and unfair competition claim (Count I) and that furthermore, Plaintiff lacks standing because the unincorporated alumni association acquired common law rights to the phrase "Takoma Academy Alumni Association" and Plaintiff acquiesced to its use. (*Id*., at 8). Defendants further seek dismissal *only as to Mr. Pittman* pursuant to Rule 12(b)(6) for vicarious trademark infringement (Count II), common law unfair competition (Count III), and conversion (Count IV). Plaintiff opposed Defendants' motion on May 28, 2013, (ECF No. 10), and Defendant replied on June 10, 2013 (ECF No. 11).

## II. Analysis

### A. Subject Matter Jurisdiction

Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power

to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (*quoting* 2 James Wm. Moore *et al.*, *Moore's Federal Practice* § 12:30[1] (3d ed. 1998)). Plaintiff bears the burden of proving that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

A challenge to subject matter jurisdiction may take two forms: a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts, outside the four concerns of the complaint preclude the exercise of subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)

(citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F.Supp.2d 730, 736 (D.Md. 2001).

First, Defendants make a facial attack, contending that Plaintiff's trademark infringement and unfair competition claims require resolution of state law corporate governance matters, and are veiled attempts to "invalidate the business decision of the TAAA Board." (ECF No. 9-1, at 10). For the reasons stated on the record at the August 22-23, 2013 hearing and those stated below, Defendants' facial challenge fails.

District courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. 28 U.S.C. § 1338(a) gives district courts "original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks," and the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* Additionally, district courts have "original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the . . . trademark laws." 28 U.S.C. § 1338(b).

Generally, whether any of a plaintiff's claims "arise under" federal law is determined by application of the well-pleaded complaint rule. *Ali v. Giant Good LLC/Stop & Shop Supermarket Co., LLC*, 595 F.Supp.2d 618, 621 (D.Md.2009) (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S.

1, 103 (1983)).  According to the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The existence of a state law question does *not* defeat jurisdiction "when the complaint shows that the claim for relief arises under a cause of action created by federal law."  *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 971 (4th Cir. 1990).  A federal court may exercise supplemental jurisdiction over claims that otherwise would not be within its jurisdiction when the claims arise from the same set of facts as those claims that are properly before the court.  *See* 28 U.S.C. § 1367(a).[5] Claims are part of the same case or controversy if they stem from a "common nucleus of operative facts."  *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 116 (4th Cir. 2001) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).  Generally, only a "loose factual connection between the claims" is required for claims to arise from a common nucleus of operative facts.

---

[5] A court may decline supplemental jurisdiction when: (1) a claim raises a complex or novel state law issue; (2) the state claim substantially predominates; (3) all claims over which the court had original jurisdiction are dismissed; or (4) there are exceptional circumstances.  28 U.S.C. § 1367(c).  Here, none of these elements favor denying supplemental jurisdiction over Plaintiff's state law claims for common law unfair competition and conversion.

*Posey v. Calvert Cnty. Bd. Of Educ.*, 262 F.Supp.2d 598, 600 (D.Md. 2003).

Plaintiff correctly states that the court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 based on claims brought under the Lanham Act. The Lanham Act does not confer jurisdiction "simply because the subject in dispute is a trademark"; the complaint must allege a violation of the statute – not just a violation of ownership rights – to state a Lanham Act claim. *Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997). Defendants argue that Plaintiff's complaint merely mentions federal law but does not present a federal question. This argument is misplaced. Plaintiff's allegations support federal question jurisdiction despite the presence of state law claims. Specifically, Plaintiff alleges a violation of the Lanham Act because Defendants use the marks over which Plaintiff asserts ownership – via registration of the "Takoma Academy" mark with the USPTO and common law use; Plaintiff also argues that Defendants' use of the marks creates a likelihood of confusion. (ECF No. 1 ¶ 38).

Accordingly, Counts I and II of Plaintiff's complaint arise under Sections 1114 and 1125 of the Lanham Act and the court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims in Counts III and IV.

Defendants also challenge Plaintiff's standing to bring this action on the ground that "the unincorporated alumni association owns the trademark right to its name by virtue of the Potomac Conference's forty years of acquiescence on the matter" and thus is the only entity with standing to pursue trademark infringement and unfair competition claims. (ECF No. 9-1, at 11). As stated on the record at the August 22-23, 2013 hearing, because Defendants' standing argument is so intertwined with the merits of the parties' dispute, the court declines to address it at this time. Accordingly, the court will dismiss without prejudice Defendants' motion to dismiss insofar as it challenges standing.

**B.    Failure to State a Claim – Rule 12(b)(6)**

**1.    Standard of review**

Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather

than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 679, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the courts to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (*quoting* Fed.R.Civ.P. 8(a)(2)). Courts cannot weigh the facts

or assess the evidence at this stage, but a complaint entirely devoid of *any* facts supporting a given claim cannot proceed.

## 2. Trademark Infringement and Unfair Competition under the Lanham Act[6]

The standards for asserting Lanham Act claims for trademark infringement and unfair competition based on the inappropriate use of a mark are largely the same. Likewise, "the test for trademark infringement and unfair competition under state law is the same as the test under the Lanham Act." *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F.Supp.2d 460, 460 (D.Md. 2002) (*citing Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422 (4th Cir. 1998)); *Microsoft Corp. v. Grey Computer*, 910 F.Supp. 1077, 1088 (D.Md. 1995)). In particular, to allege either type of claim successfully, a plaintiff must establish:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of

---

[6] Defendants have moved to dismiss Plaintiff's trademark infringement and unfair competition claim under the Lanham Act in Count I for lack of subject matter jurisdiction, but *not* for failure to state a claim upon which relief can be granted. (ECF No. 9-1, at 12). Defendants allege, however, that at bottom, "Plaintiff's Complaint fails to demonstrate trademark infringement" by TAAA, Inc. and thus Mr. Pittman cannot be held vicariously liable for trademark infringement. (*Id.*, at 13). Accordingly, the court will examine the sufficiency of Plaintiff's trademark infringement and federal unfair competition claims under the Lanham Act before turning to Plaintiff's vicarious trademark infringement and common law unfair competition claims against Mr. Pittman.

goods or services; and (5) that the
defendant used the mark in a manner likely
to confuse consumers.

*People for the Ethical Treatment of Animals v. Doughney*, 263
F.3d 359, 364 (4th Cir. 2001); *accord Lamparello v. Falwell*, 420
F.3d 309, 313 (4th Cir. 2005). The likelihood of confusion is a
factual issue dependent on the circumstances of each case and is
ill-suited on a motion to dismiss. *See Petro Stropping Ctrs.,
L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir.
1997).[7] Nevertheless, "a conclusory and 'formulaic recitation'
of the elements of a trademark infringement cause of action is
insufficient to survive a motion to dismiss." *Hensley Mfg. v.
ProPride, Inc.*, 579 F.3d 603, 609 & n.3 (6th Cir. 2009).

When the USPTO issues a certificate of registration, that
registration provides *prima facie* evidence of: (1) the validity
of the mark and its registration; (2) the registrant's mark; and
(3) the registrant's "exclusive right" to use the mark on or in
connection with the goods and services specified in the

_____

[7] Defendants do *not* dispute in their motion to dismiss
Plaintiff's contention that Defendants' use of the marks creates
a likelihood of confusion among alumni. But even if they did,
the facts alleged in the complaint are sufficient to state a
claim for relief. The complaint alleges that two competing
alumni associations fundraise, plan, and organize alumni events,
all the while using the same marks in their communications with
alumni to solicit contributions and encourage attendance at
events. (ECF No. 1 ¶¶ 28, 29). The allegation that both alumni
associations use "Takoma Academy" and target largely the same
audiences is sufficient to plead likelihood of confusion. (*Id.*
¶¶ 36, 39, 40).

certificate of registration. *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.2d 517, 524 (4th Cir. 2002). A registrant's right to use a mark in commerce for goods and services becomes incontestable once the mark has been in continuous service for five years subsequent to the date of registration. *See* 15 U.S.C. § 1065. If a mark is contestable or has not been registered with the USPTO, its validity and protectability under trademark law is "tied to [its] distinctiveness." *Retail Servs., Inc. v. Freebies, Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004); *Int'l Bancorp v. LLC Societe des Bains de Mer et du Cercle des Destrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003).[8]

Courts measure a mark's distinctiveness along a spectrum that encompasses four broad categories: generic marks, descriptive marks, suggestive marks, and arbitrary or fanciful marks. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984); *see also George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393-394 (4th Cir. 2009). A more distinctive mark enjoys greater protection under trademark law. Marks that are suggestive or arbitrary are considered "strong and presumptively valid" and are entitled to trademark protection.

---

[8] "Distinctiveness is a question of fact, whether the question is inherent distinctiveness or acquired distinctiveness." *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1208 (11th Cir. 2009).

*Pizzeria Uno Corp.*, 747 F.2d at 1527. In contrast, a descriptive mark is entitled to protection only upon proof of secondary meaning. *Id*. The United States Court of Appeals for the Fourth Circuit has defined "secondary meaning" - sometimes referred to as acquired distinctiveness - as "the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990). Put differently, descriptive marks are protected when they have "become sufficiently distinctive to establish a *mental association* in buyers' minds between the alleged mark and a single source of the product." *Retail Servs.*, 364 F.3d at 539. (emphasis in original).

Plaintiff registered the mark "TAKOMA ACADEMY" with the USPTO on February 5, 2013. (ECF No. 1, at 2). The certificate of registration grants a presumption of ownership, which Defendants must overcome by a preponderance of the evidence. *See George & Co.*, 575 F.3d at 400 n.15. Defendants argue that the unincorporated alumni association, TAAA, holds common law rights "with respect to the subject phrase" by way of "forty-plus year history" and that the incorporated alumni association, TAAA, Inc., as the alleged successor-in-interest to the unincorporated alumni association, thus continues to hold

common-law rights to use "Takoma Academy Alumni Association."
(ECF No. 9-1, at 8-9).  Defendants essentially maintain that
Plaintiff acquiesced to the *unincorporated* alumni association's
use of the marks by allowing the incorporated alumni association
to use the marks.  (*Id.* at 11).

It is not appropriate, however, to consider what is
essentially an estoppel by acquiescence affirmative defense at
this time.  An affirmative defense, such as estoppel by
acquiescence, is not ordinarily considered on a motion to
dismiss because the plaintiff is not required to negate it in
its complaint.  The purpose of a motion to dismiss under Rule
12(b)(6) is to "test the legal adequacy of the complaint, and
not to address the merits of any affirmative defenses."
*Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d
244, 250 (4th Cir. 1993).  "A court may consider defenses on a
12(b)(6) motion only 'when the face of the complaint clearly
reveals the existence of a meritorious affirmative defense.'"
*E. Shore Markets, Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175,
185 (4th Cir. 2000); *see also* 5A Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 1357, at 348 (2d ed.
1990).

That is not the case here.  In fact, Plaintiff's complaint
pleads facts rendering it plausible that the "Takoma Academy"
mark is descriptive, that it has acquired secondary meaning, and

18

that Defendants' use of "Takoma Academy," "TA," and "Takoma Academy Alumni Association" infringes on Plaintiff's trademarks rights. Specifically, Plaintiff alleges that it has used "TA" and "Takoma Academy" "continuously and exclusively . . . since the school's founding in 1904 in connection with the promotion, sale, and provision of its educational goods and services." (ECF No. 1 ¶ 10). Plaintiff further contends that Takoma Academy has used "TA" and "Takoma Academy" "to identify Takoma Academy's services and distinguish them from the services of other educational institutions, by among other things, prominently displaying and using such Marks on the school building, letterhead, correspondence, bills, direct mailings, and school and alumni newsletters, among other things." (*Id.* ¶ 12). Plaintiff argues that Defendants' use of "Takoma Academy" and "TA" in the formation of TAAA, Inc., in communications with the general public and Takoma Academy alumni, and in connection with fundraising efforts and alumni activities has a likelihood of causing – and has actually caused – confusion, and this constitutes trademark infringement. (*Id.* ¶ 28).

Considering the liberal pleading standard under Rule 8(a), plaintiff has pled sufficient facts at this stage to show trademark infringement and federal and common law unfair competition.

**3. Vicarious Trademark Infringement and Unfair Competition (Count II) and Common Law Unfair Competition (Count III)**

"''Vicarious liability' in the trademark context is essentially the same as in the tort context: plaintiff seeks to impose liability based on the defendant's relationship with a third party tortfeasor." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012). A joint tortfeasor may bear vicarious liability for trademark infringement by another. *See Hard Rock Café Licensing Corp. v. Concessions Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992). This theory of liability for vicarious trademark infringement exists where "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties *or* exercise joint ownership or control over the infringing product." *Rosetta Stone, Ltd.*, 676 F.3d at 165 (*quoting Hard Rock Café Licensing Corp.*, 955 F.2d at 1150) (emphasis added).

Here, Defendants' main contention is that Mr. Pittman cannot be held vicariously liable for trademark infringement because Plaintiff cannot show, as a threshold issue, that the incorporated alumni association's acts constituted trademark infringement. (ECF No. 9-1, at 13). Defendants further assert that Plaintiff has not put forth evidence that "Pittman intentionally caused or induced said infringement." (*Id.*). Plaintiff, however, is not required to allege that Mr. Pittman

acted intentionally to plead vicarious trademark infringement;
instead, Plaintiff must show only that Mr. Pittman exercised
joint control with TAAA, Inc. over the infringing conduct.

Plaintiff has pled sufficient facts to survive a motion to
dismiss on Counts II and III as to Mr. Pittman's liability.
First, Plaintiff asserts that Mr. Pittman exercised control over
TAAA, Inc.'s actions, controlled the "funds he raise[d] by and
through TAAA, Inc." in his role as President, organized,
advertised, and hosted alumni week "using Plaintiff's Marks to
communicate with alumni regarding that alumni week," and
continued to use the marks irrespective of the Cease and Desist
letter Plaintiff sent, which letter was specifically addressed
to him. (ECF No. 1 ¶¶ 47, 48, 53; *see* *RGS Labs Intern., Inc.
v. The Sherwin-Williams Co.*, 2010 WL 317778, at *3 (S.D.Fla.
Jan. 11, 2010)(denying defendant's motion to dismiss vicarious
liability claim where plaintiff alleged that defendant was sole
member of infringing company, which had *some* control over the
infringing product). Second, Mr. Pittman incorporated the
alumni association by filing Articles of Incorporation on April
10, 2012, thus establishing TAAA, Inc. (*Id*. ¶ 16; *see also* ECF
No. 1-2, at 4-11). Thus, Plaintiff maintains that by
incorporating the alumni association, Mr. Pittman exercised
control over the allegedly infringing entity itself. Plaintiff
alleges that TAAA, Inc., under Mr. Pittman's control, guidance,

and advice as President and agent of TAAA, Inc., (*id*. ¶ 26), continued to use Plaintiff's marks in interstate commerce in communicating and soliciting funds from alumni, irrespective of Plaintiff's demand that Mr. Pittman and TAAA, Inc. cease using the marks, and despite "knowing it would create a likelihood of confusion among alumni, consumers, and others." (*Id*. ¶¶ 47-53).

Thus, viewed in the light most favorable to Plaintiff, Potomac Conference has pled sufficient facts to survive Defendants' motion to dismiss Counts II and III.

### 4. Count IV – Conversion by Wrongful Detention

Under Maryland law, the common law tort of conversion contains two elements. First, the plaintiff must prove the defendant exerted "any distinct ownership or dominion . . . over the personal property of another in denial of his right or inconsistent with it." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261 (2004). "This act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Id*. Second, the defendant must have "an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id*. at 262.

Defendants do not specifically explain how Plaintiff fails to state a conversion claim, but allege that "[t]he Plaintiff's Complaint is completely devoid of any factual allegations

demonstrating Mr. Pittman engaged in any wrongdoing or obtained a benefit from the actions complained" or that Mr. Pittman acted fraudulently. (ECF No. 9-1, at 13). To the contrary, Plaintiff has pled sufficient facts to show conversion. Specifically, Plaintiff alleges conversion by Defendants' retention of "Plaintiff's Alumni Information . . . under the guise of rightful ownership" even after Plaintiff disassociated from the alumni association on June 7, 2012 and sent a Cease and Desist Letter to Mr. Pittman. (ECF No. 1 ¶ 63). Conversion encompasses "acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Sher v. SAF Financial, Inc.*, 2011 WL 1466451, at *4 (D.Md. Apr. 15, 2011) (*quoting In re Yalkut*, 143 N.M. 387 (2008)).

Here, Plaintiff addressed the January 17, 2013 Cease and Desist Letter to Mr. Pittman, demanding from Mr. Pittman that he return "all databases, alumni lists and other property belonging to Takoma Academy which were given to [Mr. Pittman] when [he] became president of the [unincorporated alumni association.]" (*Id.* ¶¶ 64-66; *see also* ECF No. 1-2, at 43). "Mere temporary interference with property rights is not sufficient" to show conversion, but here, Mr. Pittman's interference is ongoing, not temporary, as he has allegedly continued to withhold and use "Alumni Information" which Plaintiff asserts belongs to Takoma

Academy.  *Waterfall Farm Systems, Inc. v. Craig*, 914 F.Supp.
1213, 1227 (D.Md. 1995).  Plaintiff alleges that "Defendants
[including Mr. Pittman] continue to use Plaintiff's Alumni
Information in an unauthorized manner in operating TAAA, Inc.
and communicating with Takoma Academy alumni and the general
public." (ECF No. 1 ¶ 66).

Defendants assert that Plaintiff's complaint fails to show
that Mr. Pittman "obtained a benefit from the actions
complained," (ECF No. 9-1, at 13), but Plaintiff need not show
that Mr. Pittman obtained a benefit from the alleged conversion.
Instead, conversion requires a showing that a defendant
converted "a plaintiff's goods to his own use, or . . .
wrongfully deprive[d] a plaintiff of their use." *Kirby v.
Porter*, 144 Md. 261 (1923).  Here, Plaintiff alleged that
Defendants, including Mr. Pittman, continue to use and refuse to
return Plaintiff's database with alumni information.  (ECF No. 1
¶¶ 13, 66).

Accordingly, Plaintiff states a plausible conversion claim
and Defendants' motion to dismiss this Count as to Mr. Pittman
will also be denied.

### C.  Defendants' Request for Attorneys' Fees and Costs

In the motion to dismiss, Defendants request attorneys'
fees and costs because Plaintiff's complaint "is frivolous,
defamatory, and filed in bad faith, with substantial misleading

24

statements and misrepresentations." (ECF No. 9, at 2). Neither side is entitled to fees at this point.

**III. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss will be denied. A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge